RECEIVED

DEC 13 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

December 11, 2018

Cary Lee Peterson
Monmouth County Correctional Institution
1 Waterworks Rd.
Freehold, NJ 07728

ATTN: Clerk of the Court
       Criminal Division
       U.S. District Court of New Jersey
       402 E. State St.
       Trenton, NJ 08608

Re: USA v. Cary Lee Peterson, 16-cr-230
(AET) — Exparte Motion for Waiver of
Counsel, Appointment of Standby Counsel,
and Renewal of Omnibus Motion,
Motion for Judgment of Acquittal,
and Post-Conviction Bail / Detention
Order (hereafter referred to as "Omnibus Motion")

Dear Court Clerk:

Please take notice that on this 11th
day of December, 2018, or as soon
thereafter as counsel can be heard
and confirm his adoption of the
Defendant's notice of the aforesaid
requests to this court, which shall
be in lieu of a Faretta Hearing
and formal court motion due to
circumstances that have placed the
Defendant in a position with very
limited resources to advocate and
plead the matter at hand, and multiple
related cases pending with other
jurisdictions and tribunals, including

Cary Lee Peterson v. Garvey Shubert Barer [and] John Doe, 3:18-CV-14649-BRM-LHG, a civil case being heard with the same courthouse at USA v. Cary Lee Peterson.

Thus, the Defending Party respectfully moves this Honorable Court for an Order to allow the Defendant, Cary Lee Peterson to waive the right to Counsel, appoint standby Counsel [Eric Marcy], and proceed as Pro Se in his defense pursuant to New Jersey Court Rule 3:4-2, and for such other and further relief as the court deems just and proper, pursuant to the pleadings of this handwritten legal brief.

Please take further notice that the Defendant will rely on the enclosed certification in support of within this omnibus motion.

Please take further notice that the Defendant requests (1) grand jury minutes, (2) all Brady and Jencks materials related to government witnesses, (3) all Brady materials related to Garvey Schubert Barer [law firm] and ANY complaints against Defendant filed by an individual or non-governmental organization, (4) minutes from jury trial witness testimonies [only; not minutes from the entire jury trial], and an Ake motion order to perpetuate legal consultation and assessment (to be used

③

for motions for departure or other proceedings ) from former defendant expert-witness, Merrit Cole, Esq., in the event a hearing or deposition is ordered to plead the matter at hand, or the court decides to proceed with Sentencing hearing(s), as previously scheduled.


Respectfully submitted,



Cary Lee Peterson                    12/11/2018
                                     Date


CC: Eric J. Marcy, Esq.;
    AUSA-NJ, Ari Fontecchio

12/11/2018

Cary Lee Peterson
Monmouth Co. Correctional Institution
1 Waterworks Rd.
Freehold, NJ 07728


Re: USA v. Cary Lee Peterson, 16-cr-230
(AET) - Certification to Support Omnibus
Motion

Dear Court Clerk:

Please accept this Certification at the
Chamber of Honorable Judge Anne E.
Thompson in lieu of a more formal
brief in support of Defendant's
Omnibus Motion.

Thereby, Defendant, Cary Lee Peterson
being duly sworn, deposes and says
that he is the petitioner above named,
and that he has read the foregoing
petition for "Omnibus Motion", by him
subscribed, and knows the contents there-
of, and that the same are true of
his own knowledge, except as to those
matters therein alleged on information
and belief, and as to those matters,
he believes it to be true.

Respectfully submitted,

Cary Lee Peterson

Intro (4B)

Cary Lee Peterson [Pro Se]
Monmouth Co. Correctional Institution
1 Waterworks Rd.
Freehold, NJ  07728
caryleepeterson@mail.com


December 12, 2018

ATTN TO: Clerk of the Court
              Chamber of Hon. Judge Thompson


Re: USA v. Cary Lee Peterson, 16 CR 230
(AET) — Legal Argument in support
for Omnibus Motion and Pro Se
Representation

This Memorandum of Law, Table
of Contents is as follows:


I. Overview — Purpose of Pleadings


II.   Definitions


III.   Memo Points


IV.   Related Exhibits and Case Law
      [See notes included and written
       on exhibits; all exhibits from
       trial, other cases filed before
       trial known to this court]

⑤

# I OVERVIEW - Purpose of Pleadings

Defendant, Peterson's pleadings for this Omnibus Motion open with a request for an Exparte Motion for Waiver of Counsel in efforts to expedite proceedings and limit use of judicial resources, as this case has been open for almost three years, and has been adjourned seven times [for Sentencing] in the past three months, primarily due to implacable disputes and errors with the Pre-Sentence Report, precluding Parties from normal post-conviction proceedings, which would include the Defendant's right to an appeal to vacate a sentence, and enter a motion for release while awaiting appeal pursuant to 18 U.S.C. 3143, as the Defendant is not waiving his Sixth Amendment Right to legal counsel for related case pending, including administrative action from an Agency of the government. Hence, the Defendant is incarcerated in New Jersey, yet has pending legal action in other jurisdictions and venues, inferred by this case.

Additionally, Defendant requests that current defense counsel, Eric J. Marcy, Esq. may be appointed as Standby Counsel for Defendant hereafter, until final judgment is made for this case.

6

It is to the Defendant's understanding that any reconsideration of a motion for judgment of acquittal pursuant to Rule 29 (or a new trial under Rule 33 as an alternative) is weighed upon whether the evidence presented at trial was sufficient to sustain the conviction. Additionally, the court has to be convinced that the evidence proved the government's case beyond a reasonable doubt, and in a way sits as the thirteenth juror. In this regard, new evidence [meaning "known" or "after-discovered"] has been discovered, or was known to the court or Parties and/or was in existence at the time of trial but the Defendant could not have reasonably discovered with reasonable diligence, or was able to access or present to the court for purposes of trial due to excusable neglect pursuant to Rule 45(b) or preclusions by intervening and superseding causes of related legal action and proceedings.

Thereby, Defendant seeks a reconsideration for the Motion for Judgment of Acquittal, as the availability of new evidence [which was known to the court and Parties before or during trial] was not available when the court issued its order for the [initial] Rule 29 motion; [and] "the need to correct a clear error of law or fact or to prevent a manifest injustice." May's Seafood Cafe v. Quinteros,

7

176 F. 3d 669, 677 (3rd Cir. 1999);
United States v. Croce, 355 F. Supp.
2d 774, 775 (E.D. Pa. 2005) (applying
the same standard to a motion for
reconsideration in a criminal case.

Ad hoc, Defendant did not obtain
the Notice of Appeal from Office
of Information Policy [Case ID: DOJ-
AP-2019-000176] at U.S. Justice
Department regarding 'blocked' and
obstructed personal information on
Defendant, Cary Lee Petersen's FBI
reports requested by way of FOIA
request (with proper I.D. verification),
and by court motion [both attempts]
made before Peterson trial began.
Hence, the FBI erred, 'blocked',
and withheld materials and reports
specifically to curtail the jury ver-
dict and filing of the motion for
an acquittal or new trial under Rule
29 and Rule 33, which has resulted
in Defendant requesting for reconsid-
eration to be granted for the extra-
ordinarily rare and unusual circumstance
pursuant to Rule 45(b)(1)(B), 'excusable
neglect' [by counsel], as in United
States v. Figueroa, Case 0094 (U.S. E.D.
Pa. 3rd Cir. 2007) where Rule 45(b)
was applicable to grant a motion
for a new trial based on newly dis-
covered evidence under Rule 33(b)(1).
Rule 45(b) was amended in 2005
to conform to amendments to Rules
29, 33, and 34 which have been
amended to remove the requirement



that the court must act within the seven-day period specified in each of these rules if it sets another time for filing a motion under these rules.

Furthermore, Defendant pleads that the 'blocked' (or "classified") FBI reports [on Defendant, "Peterson" only] is of such nature to draw a clear nexus between claims [supported by enclosed evidence] in Peterson v. Garvey, 3:18-CV-14649, and Peterson v. RVPlus, et al., which U.S.D.J. Stark in Delaware decreed a stay [on Peterson v. RVPlus] due to "over-lap" among USA v. Peterson and his [civil] case, an order made a few days before Peterson trial began; a significant portion of "content" is among Defendant's FBI reports that were denied for release on December 11, 2018, nearly nine months after the initial requests pursuant to FOIA Request Policy for an individual's [own] personal information on record with a Department or Agency, content on FBI reports that exculpate Defendant on counts of the indictment and would "probably produce an acquittal," United States v. Cimera, 459 F.3d at 458. Hence, impeachment evidence, deriviative evidence, as well as exculpatory evidence falls within the Brady rule (citing Giglio v. United States, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104, 1972).

⑨

Further, the evidence in Peterson v. Garvey, a newly filed civil case bears very similar (or same) exhibits as in Peterson v. RVPlus filed before USA v. Peterson trial began (i.e., email chain exhibit which infer that 'Garvey filed the federal charges' against Defendant, Peterson in efforts to "obtain an improper advantage on a civil matter", a violation to N.J.S.C. provision R.P.C. 3.4(g)). Ad hoc, the aforesaid evidence which infers that "Garvey" and his "associate" were liable [directly, indirectly, constructively, or vicariously] for frivolous criminal charges of this case, which should have been presented by the government upon defense counsel's request for all Brady materials, including any third-party, qui-tam, or Agency complaints filed against Defendant regarding the claims of the indictment in this case specifically, which resulted in no response from the government. Thus, the FBI reports would confirm "Garvey-Dee" claims, as well as confirm the theory of Daloisio Doctrine of Addendum Two in Peterson v. Garvey, and that "Peterson" was at no time the "responsible person" for RVPlus, and only possessed control of DBS Distributors and ECCO2 Corp, according to "known" [trial] exhibits of this case, and exhibits of related civil cases in New Jersey, Delaware, Ohio, and California, which all [but Garvey case] were filed before Peterson trial began.

(10)

## II. DEFINITIONS

A. "reasonable doubt": defined as "a doubt based on reason and common sense after careful and impartial consideration of all evidence in the case", per Jury Instruction 10, United States v. Flonnory, No. 5:09-CR-163-M-1 (W.D. Okla, Sep. 16, 2009)

B. "Garvey": defined as a law firm based in Washington, D.C., owned by Brad Duetsch, Senator Bernie Sanders' 2016 Presidential Campaign Committee who made public comment on Defendant's arrest [that he arranged] on March 13, 2016 for charges of this case according the evidence in Peterson v. RVPlus, [also] Peterson v. Garvey, and now referenced in media controversy in the public domain, and raise concerns of potential disservice to public interest, as recent news articles implicate.

C. "Nonevent": defined as the purported "reverse-merger" transaction between RVPlus, Inc. and DBS Distributors that did not complete due to breach of contract by "Seller", Christopher Day and "Seller" attorney, Gregg Jaclin, who maintained actual control in management of RVPlus, Inc. according to government witnesses of this case, and claims and evidence from related cases, and corporate records on file with the State of Delaware Office of

11

Corporations.

D. "ECCO2": defined as a corporate brand trademarked and owned by Defendant (est. 2009), operating in the capacity of a for-profit Delaware corporation, DBS Distributors, and in a non-profit capacity under ECCO2 Corp, a Texas corporation, the parent licensor/owner of "ECCO2" intellectual property rights; an enterprise launched to conduct research and development of "green" technologies for energy efficiency.

E. "Daloisio's Doctrine": defined as — Garvey's tort and conspiracy that Garvey client, "TK" inferred was the cause of the "federal charges" to maliciously prosecute "Cary [Lee Peterson]" — "let's say "A" manufactured evidence against you and gave it to "B", who in turn, knowing it was false, convinced "C" to file a criminal complaint. "D" investigates the complaint and finds out the evidence was manufactured by "A" but convinces "E" to prosecute you. "E" learns of everything and does nothing about it. Hence, A, B, C, D, and E are liable for all of the torts (or conspiracies) committed by any of them under N.J.S. 2C:5-2 and U.S.C. 875 and 876; the judge ["E"], however, has judicial immunity."

(12)

F. "responsible person": see enclosed item marked as "Ex. 8", USA v. Carrigan for definition pursuant to U.S.D.J. Anne E. Thompson's judicial opinion.

(13)

12/11/18  Notes  Rule 29 Renew

" Background

[Creation of RVPlus]

[Creation of DBS Distributors
and ECCO2 Corp, as hereafter referred
to as "ECCO2" collectively]

[Agreements related to ~~reverse~~,
@ the purported RVPlus- ECCO2
"reverse-merger", hereafter referred
to as "Nonevent"]

[SEC Intervention in 2013]

[Pro-Sanders PAC negative press
involving Peterson, Sanders, and
"James Bond" actor @ known as
"Craig" in Garvey case, hereafter
referred to as "Garvey Intervention"

[~~Peterson~~ Peterson v. RVPlus, et al.
civil case  1:18-cv-____, hereafter
referred to as "Delaware Case"]

NOTE: [Plaintiff(s) have not created a
fact issue with respect to
three elements: reliance, scienter
, and proximate cause —
Ratliff v. Baan Co. (11th Cir. 2003)

Scienter requires a proof a "
mental state embracing intent to
deceive, manipulate or defraud,"
~~Bryant~~ Bryant v. Avado Brands, Inc.,
187 F.3d 1271, 1282 (11th Cir. 1999)-
meaning — ~~acted~~ Defendant acted
with "severe recklessness" opposed

(V4)

12/11/18    Rule 29 Renewal

to "good-faith". Hence, as ~~Baar Co.~~ Ratliff v. Baar Co., at [Id.] 1282, n. 18, the ~~Baar Defendants~~ Defendant pleads in this motion that there was no evidence presented by the government that Defendant, Peterson acted with the requisite scienter because he relied upon the advice of auditors, assumed the auditors, conduct was appropriate, and relied on that advice in good faith. Thereby, severe recklessness cannot be proven / See SEC v. Caserta, 75 F. Supp. 2d 79, 95 (E.D.N.Y. 1999).

Kinross,

~~(TO)~~ Additionally, Defendant pleads that the government did not demonstrate a proximate link between their claims of false certification and securities fraud and their alleged "damages" and "victims", as the ~~purported~~

interpolated ed

who testified on behalf on gov't

"Blue Sheets", ~~prepared~~ from a non-governmental source purported in an affidavit and document not presented until a after Peterson trial.

Additionally, Defendant pleads that ~~(TO)~~ ~~(TO)~~ Nonevent agreements contained "clauses" and "disclosures" that were to protect the Defendant in the occurrence of breach of contact, fraud, or ~~malpractice~~, wrongful acts, or professional error ~~(TO)~~ commissioned by Seller, Day

(15)

12/7/18    Rule 29 Renewal

[In the most favorable light of the government]

1. The gov't witnesses from Africa testified that the material agreements with multiple parties for foreign transactional projects we interpolated in one way or another. Thus, any interpolation among a public disclosure submit to the SEC would be deemed a "false statement" if the interpolation appeared to deceive the public in efforts to defraud them. ["willfully"] ["knowingly"]

Ad hoc:

(A) ~~Affir~~ Foreign minister Harrison [Liberia] stated he did not sign the agreement; his brother who worked for him did. Hence, this means his testimony ~~was~~ was given in lieu of another person which was not pursuant to any order of this case. In addition, testimony from Harrison exposes acts of negligence, misrepresentation, and deceit on his behalf since the signature line for his portion of the Agreement from Liberia MoU was to be signed by Harrison Luo, Minister of Economic Affairs for Liberia, not a third-party in concert and participation, or proxy acting on behalf of him.

Further, nor evidence under Brady or Jencks Act was ever presented by the gov't to confirm whether

(16)          12/7/18          Inference – Rule 29

or not both African foreign
ministers were within "official capacity"
to act on behalf of the country
that were said to be from, nor
were they properly identified to be
whom they claimed to be (i.e.,
diplomatic passport; citizen passport;
verification from foreign nation's embassy
or consulate in the U.S.) — meaning,
acting on behalf ~~of a this~~ foreign government
or foreign gov't agency in "official"
capacity to enter the aforesaid
material agreement for aforesaid foreign
gov'ts, and thereafter communicate
with a U.S. gov't agency, which
circumvents [proper chain of command]
State Department duties and Ministry
or Departments of Foreign Affairs in
foreign nations. Hence, the gov't failed
to present any of the aforesaid
evidence before, during, or after trial,
both, violations to Brady and Jencks,
as it was ordered ~~Rule~~ by the
court to do so.

Thereby, the emails ↗ unlawfully obtained by SEC in 2013 via duplicity [5th violation] between Defendant
and the African Foreign Ministers
only infer that a material agreement
was entered between them and for
whatever reason it was breached
due to material noncompliance, which
is a civil matter unrelated to the
matter at hand. Thus, the "unverified"
foreign gov't witnesses' inference
to material noncompliance does not
provide any direct or circumstantial
evidence beyond reasonable doubt to

(VI)          12/7/18        Rule 29 Renewal

[material
noncompliance]

of     to infer that the breached
material agreements for foreign
transactional project induced any result
"false statements" willingfully filed
with the SEC to commit fraud or
disserve the public in any way.

Ad hoc, the Liberian Minister stated
that he did not sign view/sign
the final draft of the "MOU".

Additionally, both African foreign gov't
ministers' testimonies were recollecting events occurred
very remote in 2012,
which were very remote from their
testimonies made at trial in May 2018.
Hence, the gov't failed to
present Brady evidence, as past
voluntary statements or affidavits
to cross examine the two aforesaid
witnesses at trial.

NOTE: Circumstantial evidence is based
on "inference", not "implication". Further,
the inference of evidence must be
beyond reasonable doubt — even
an implication that fraud and false
statement(s) were begotten from a foreign trans-
actional project "gene south" due to
material noncompliance is less than
marginal.

(18)

12/7/18   Inferences        Rule 29

Foreign diplomat, Zakari ends his
testimony with Defense counsel, stating
that he testified because the
breached material agreements caused
him embarrassment with the Nigerian
foreign minister, Safana and he
"was angry with [Defendant] Cary Lee
Peterson." ~~the Peterson~~ In addition,
Zakari states in his testimony that
Peterson never was a representative
from his non-governmental organization
at the UN, yet the UNFCCC director
from Germany ~~Katie~~ testified to
multiple UNFCCC documents that
Defendant attended multiple UNFCCC
events as an accredited representative
for Zakari's NGO, Center for Climate
Change between 2010-13, which
contradict @ Zakari's testimony
allegedly induced by [self-proclaimed]
"anger" for Defendant.

Thereby, Zakari's testimony was
not credible in any way, was similar
to the foreign ministers who remotely
recall the material agreement (and
related event that led up to it) in
2012, and provide no inference
of evidence to ANY charges of
the ~~the~~ indictment of this case.
~~the~~ Similarly, the gov't fails to present
any prior interviews with Zakari held
before the trial (i.e., SEC 2014)
to cross examine the witness; Brady
~~the~~ violation.

(19)

12/7/18        Interees

Further, the three CPAs that
testified ~~⊘~~ as gov't witnesses
had all been sanctioned by SEC
and/or ~~⊘⊘~~ a state ^regulated ~~regulatory~~ tribunal
for certified public accountants around or
about the same time they claimed
to work with RVPlus.

*for malpractice / wrongful acts*

Additionally, the aforesaid accounting
experts were cross examined on
evidence initially obtained by Petersen
via duplicity ~~⊘⊘~~ of the SEC in 2013,
who purported ~~⊘~~ to be conducting
a civil investigation for a penny
stock company, that appeared to be
operating recklessly. Ad hoc, at
no time did the SEC warn Petersen
of criminal action (or ^their recommendation
of it) while coercing him for
RVPlus materials ~~⊘⊘⊘⊘~~ which Petersen
delivered ^voluntarily via upload to Dropbox
before the SEC Administrative Subpoena
~~being sent~~ ~~⊘⊘⊘~~ in 2013, which included
not warning the he may face criminal
charges ~~⊘⊘~~ and/or may need to
hold to his 6th Amendment right
to consult with a [criminal] attorney
on ~~⊘⊘~~ the prior [now present]
issues at hand. Thus, the SEC was
fully informed by Petersen of the
negligence, wrongful acts, and disputes
related to RVPlus, Gregg Jaclin (~~⊘⊘⊘~~
securities attorney), and RVPlus acting
corporate officer in control of mgmt,
Chris Day.

20

12/7/18  Inferences  Rule 29

~~Con   Con~~

Additionally, none of the three CPAs ever met Peterson in person, nor did proper due diligence ~~on the~~ ~~beginning   on   on~~ at ~~or in~~ the "start of business" to identify "Cary Lee Peterson", as an individual, [In general] or a person who was [in fact] "CEO", a corporate officer, (or equivalent) for RVPlus, Inc. Hence, the gov't failed to present prior materials or evidence besides ~~or~~ ~~copies~~ email copies that appear to be between Defendant and "CPAs". ~~Whereas~~ Whereas, ~~on   disclosed~~ a digital email signature from an individual purporting to be a [nominal ~~or~~ ~~or~~ or "official"] "CEO" (or equivalent) for a publicly trading company does not suffice verifying identity and official title beyond "hearsay". Thus, the three [~~as a sanctioned~~] CPAs were within their official capacity as CPAs/auditors when the "RVPlus Events" occurred yet exemplify a modus operandi of negligence and malpractice as public accountants by failing to conduct such verification of a public filer that they must attest to, as they did for this instance. ~~Hence~~ Ad hoc, had Defendant not been a public figure, easily found on the internet or with media archives, or been pointed-out by a third-party during trial, the gov't witness would have never been able to identify who the "CEO" really was at RVPlus.

㉑

12/7/18   Inferences   Rule 29

Again — in the most favorable light
of the gov't, as decreed by the
SEC in Admin Proceeding Order against
Day and ARTCO, Peterson was
aided and abetted by Day and ARTCO
[and "Promoter", Jaelin], who caused
him to commit securities fraud ~~or~~
under Securities Exchange Act ~~that~~
~~[scribbled out]~~

[unknowingly
due to association as a nominal
CEO to the public ~~o~~ ~~OO~~ between
*around or about* May 2012 and ~~OOO~~ ~~[scribbled]~~
Peterson ~~OOO~~ around or about ~~to~~ June
2013 when Peterson confirmed from
FINRA, SEC, ~~OO OOOOO~~ Delaware State,
*OTC Markets* and EDGAR Filing Agents that he
was not the listed "CEO", "corporate
officer", "fiduciary" "principal", or
"responsible person" (pursuant to
U.S.D.J. Thompson's definition in
USA v. Carrigan), ~~OOOOO~~ ~~OOOOOO~~
which inferred that the KDP Partners,
which included Tom Klein, ~~Michael Market~~
and me had been defrauded by
Gregg Jaelin, Christopher Day, and ARTCO
~~OO~~ and the purported RVPlus ~~OO~~, Inc.
— DBS Distributors, Inc. ("reverse-merger")
transaction ~~OO~~ announced to this
general public via SEC filings ~~OOO~~
~~OOO~~ by Day and/or Day's "attorney",
and "Promoter" [Jaelin] ~~OOOOO~~
~~OOO OOOO OOOOO OOOO~~

(22)

12/8/18    Inferences    Rule 29

as the SEC ~~(DOI)~~ refers to him
in the May 2016 Admin. Proceedings
Order on Day and ARTCO), and
other media content derived from
the SEC filings ~~(DOI)~~ ~~(DOI)~~ around
or about May 2012, and
continued ~~(DOI)~~ until around
or about ~~(DOI)~~ ~~(DOI)~~ ~~(DOI)~~ April
2013 ——— all of which were false
statements, ~~filed by RVPlus under Day SEC code~~ inferred by the aforesaid
purported "reverse merger" that was
in fact a nonevent ~~(DOI)~~ ~~(DOI)~~
that ~~(DOI)~~ induced [in chronological order]
                      the following causation(s): and
                      that are "inference of this case"
(A) ~~false statement to the~~
    ~~and the several other related cases among~~
                 OH, NJ, CA, DE, and DC:
EDGAR ~~(DOI)~~ Filing one of 17 false statements
[series] filed to the SEC, purporting that:
(1) RVPlus completed a "reverse-merger"
and had "change ~~(DOI)~~ of control"
and management", including appointment
of Cary Peterson, as "CEO" and James Bledsoe
as "COO",
(2) Disputes and complaints filed
at SEC, FINRA, EDGAR ~~(ARTCO)~~
and OTC Markets by Peterson, Klein, Talento, and Associates"
(a) on concerns with:
Day and Jaelin's failure to comply with
Licensing "Stock Purchase" and "Escrow Agreement"
(which include events disclosed in
Section 4 of "Stock Purchase Agreement")
~~(DOI)~~ ~~(DOI)~~
~~none~~ ~~(DOI)~~
~~(DOI)~~ RVPlus not returning ~~(DOI)~~ or respond
~~to dispute~~

(23)

12/8/18   Inferences   Rule 29

— RVPlus not replying to dispute calls ⊘ or emails

(or obstructing)
— RVPlus refusing to forwarding of documents pursuant to "Agreements"
(i.e., issuance of stock certificates ~~stock purchase~~
⊘ for restricted shares from purchase and licensing agreements; ~~stock of~~
~~stock~~ board minutes, ~~and~~ articles and resolutions of corporation, [counter-signed] engagement letter from Anslow-Jaclin law firm, RVPlus attorney, which was not obtained until ~~000~~ ~~~~
⊘ around or about November 2016 from KDP, Klein, ~~~~ Herbert v. Jaclin-Day civil suit in Ohio known to the court, USAO-NJ, FBI, SEC, and my defense counsel before jury trial took place in May 2018.

(2) ⊘ Ad hoc, with proof of ownership of corporation stock and official corporate documents,

(a) Peterson was unable to manage any duties or responsibilities of the Corporation himself at SEC, EDGAR, banks, property management firms + corporate insurance carriers.

(24)

11/18/18 — Legal Notes

[Legal Standard for
Motion for Judgment of Ac]

Rule 29 Case Law

In reviewing a Rule 29
motion for judgment of acquittal,
a district court must consider
the evidence, both direct and
circumstantial, "in the light most
favorable to the prosecution" to
determine whether the "body of
proof, as a whole, has sufficient
bite to ground a reasoned
conclusion that the gov't proved
each of the elements of the
charged crime beyond a
reasonable doubt." United States
v. Lara, 181 F.3d 183, 200
(1st Cir. 1999). This standard
requires the resolution of all
evidentiary disputes and credibility
questions in favor of the gov't.
The Court must also draw all
reasonable inferences in favor of
the government's case. United States
v. Savarese, 686 F.3d 1, 8
(1st Cir. 2012). Thus, the jury's
verdict stands unless the evidence
could not have persuaded a
rational trier of fact of the
defendant's guilt beyond a
reasonable doubt. United States v.
Soler, 275 F.3d 146, 150 (1st Cir.
2002) (Also citing: Lara, 181 F.3d
at 200). The Court ~~only~~ assesses
only the admissible evidence at
trial in applying the sufficiency
standard. United States v. Aviles—Colon,
536 F.3d 1, 13—14 (1st Cir. 2008).

(29)

11/18/18    Legal Notes

[define: miscarriage of justice]

NOTE: the evidence <u>preponderates</u> heavily against the <u>verdict.</u>

United States v. Pauling ——

In deciding a Rule 33 motion for a new trial, courts must determine "whether letting a guilty verdict stand would be a manifest injustice" United States v. Aguiar, 737 F.3d 251, 264 (2nd Cir 2013) (Also: United States v. Ferguson, 246 F.3d 129, 134 (2nd Cir. 2001) Such motions are granted only in "extraordinary circumstances" United States v. McCourty, 562 F.3d 458, 475 (2nd Cir 2009) [Also see: USA v. Torres, 128 F.3d 38, 48 (2nd Cir 1997) where a court is left with a real concern that an innocent person may have been convicted," Aguiar, 737 F.3d at 264; Ferguson 246 F.3d at 134]

["renewed rule 29 motion," "Granted"]

USA
v.
Peterson
Rule 29 + Omnibus Brief
Pages 1-25
(page numbers in top right corner of page)

NOTE: Please return
copies of originals
if possible

This envelope is made from post-consumer waste. Please recycle again.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

P S 0 0 0 0 1 0 0 0 0 1 4



PRIORI
★ MAIL

WHEN USED INTERNATIONALLY
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

DATE OF DELIVERY

USPS TRACKING™ IN

INSURANCE INCLUD

PICKUP AVAILABLE

* Domestic only

EP14F July 2013
OD: 12.5 x 9.5

VISIT US AT USPS.COM ®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE ®

---

**UNITED STATES POSTAL SERVICE ®**  **Click-N-Ship®**

| P | usps.com<br>$6.70<br>US POSTAGE<br>Flat Rate Env | 9405 5036 9930 0323 4433 85 0067 0000 0080 8608 |
| --- | --- | --- |

11/13/2018   Mailed from 95153   062S000001310

### PRIORITY MAIL 2-DAY™

Expected Delivery Date: 11/15/18

Cary L. Peterson                                    **0006**
I#43903 - Sec H2
Monmouth County Corrections
One Waterworks Road
Freehold, NJ 07728                          **C034**
Carrier -- Leave if No Response

SHIP
TO: US DISTRICT COURT, DISTRICT OF NEW JERSEY
    402 E STATE ST
    STE 2020 — 3:16-CR-230 (AET)
    **TRENTON NJ 08608-1500**

---

### USPS TRACKING #



**9405 5036 9930 0323 4433 85**

---

Electronic Rate Approved #038555749

PRIORITY MAIL
POSTAGE REQUIRED



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2017. All